**GELEP, Plaintiff-Appellee v. McCLELLAN, Defendant-Appellant.**

Ohio Appeals, Second District, Montgomery County.

No. 1808. Decided June 6, 1944.

12

Virgil Z. Dorfmeier, Dayton, for plaintiff-appellee.
George F. Holland, Dayton, for defendant-appellant.

## OPINION

By HORNBECK, J.

This is an appeal on questions of law from a judgment of the Common Pleas Court affirming a judgment of the Municipal Court of the City of Dayton, Ohio, entered upon a directed verdict for the plaintiff. The first cause of action of plaintiff was for forcible detention of a certain apartment located at No. 810, Wayne Avenue, in the City of Dayton, on and after April 30, 1943. The second cause of action was for $12.50 claimed arrearage in rent from July 1, 1942. The defendant cross-claimed for treble damages in the sum of $198.50 for overpayment in rent pursuant to a ruling under the Emergency Price Control Act of 1942. The directed verdict, the original of which is not among the papers but which, according to a purported copy in the bill of exceptions, is as follows:

"We the jury in this case, being impaneled and sworn, do find for the plaintiff on plaintiff's amended statement of claim and fix the rent due as of May 1st, 1943, in the sum of $12.50 and do further find in favor of the plaintiff and against the defendant on the defendant's amended cross-statement of claim."

The trial judge in directing the verdict explained to the jury the reasons therefor at considerable length. It was done upon the theory that the Area Rent Director acting as Administrator of the OPA of the federal government had the exclusive right to determine the amount of rental that should be paid for the premises in question and had so ordered. That because of the proceedings before this officer as to fair rental of the premises, the rent was by the regulations fixed at $45.00 per month from July 1, 1942, to April 1st, 1943, and $40.00 per month thereafter which, if true, left a balance due the plaintiff of more than set out in his second cause of action and established that the plaintiff was entitled to a verdict on his first cause of action.

The plaintiff claimed the right to additional rental because of a notice filed with the Rent Director to the effect that he had made major capital improvements upon the premises involved to the benefit thereof and it was the theory of the trial judge, that in the interim between the time when the application for increased rental was made and the time when the administrator fixed $40.00 as the fair monthly rental for the premises, the plaintiff was, as a matter of law, entitled to receive $45.00 per month. The defendant by his answer and

cross-statement of claim sought to make an issue whether or not the improvements claimed to have been made had, in fact, been made to the benefit of the premises occupied by him, and it was asserted that they had not been so made. The court refused to hear any testimony whatever directed to this claim upon the theory that the action of the administrator fixing the rent of the premises concluded this question, and could not be collaterally attacked. This action of the court is the subject of the first assignment of error which is not well made as will more fully appear hereafter.

Other errors assigned are, the court had no authority to direct a verdict and that the verdict as directed was irregular and not in conformity to the provisions of the general code; that the court erred in the admission of testimony proffered by plaintiff and in the exclusion of testimony offered by defendant; that the court erred in permitting members of the jury to interrogate witnesses by incompetent questions which were then and there excepted to.

**Daniel Blaugh**, Chief Rent Attorney at the Area Rent Control Office, Dayton Defense Rental Area, took the stand on behalf of the plaintiff. He was interrogated generally as to the filing of certain papers in the proceedings relative to the premises under consideration and was permitted to testify as to the effect of these papers and the order of the administrator. Evidently, he had the records of the Area Rent Office in his possession. In one instance only was any of the records marked as an exhibit and proffered in evidence. The court made the observation when the witness said the originals of the records could not be left that certified copies should be made and provided, but there is no indication that any such action was taken and there is no exhibit whatever offered by the plaintiff as to any of the proceedings incident to the action of the administrator respecting the rent under consideration. Practically all of the testimony offered by the witness was incompetent and irrelevant, in the absence of the formal offering of the records but, with rare exceptions, counsel for the defendant interposed no objection whatever to the incompetent testimony. So that, the court committed no error in accepting this testimony and even though incompetent, where not objected to, it must be accepted for what it is worth and has certain probative value, **17 O. Jur., Evidence, ¶302, p. 380.** There is one instance in the record where counsel for the defendant interposed objection to a question propounded to this witness where the court ruled adversely to him. At page 7 of the record:

"Q. What was the rent which the landlord was entitled to receive from July, 1942, in accordance with the regulations and rules of the Office of Rent Control?

A. $45.

Mr. Holland: I Object."

The court overruled this objection. Being but a legal conclusion of the witness, it was incompetent, inadmissible and improperly received.

At page 17 of the record, Juror No. 2 asked this question of the witness:

"Q. If, in the event the $40 a month rental goes into effect on the next rent paying day after the letter was sent out, was $45 a month or $37.50 a month a fair rental at the time they were collected.

Mr. Holland: That is the question we are trying to answer.

A. The maximum legal rent under the registration from July 1, 1942, to March 1, 1943, was $45 a month. The order on March 15th, 1943, then became effective the first rent paying date after March 15th, 1943, reducing that to $40 per month."

It will be noted that no objection was made to the question although it was improper, as was the answer, and subject to the same infirmity as the similar question propounded to the witness at page 7, which we have heretofore discussed. Obviously, the answer of the witness was but his legal conclusion of the answer to the question which was for the determination of the jury. However, although the admission of the testimony in the instance where objection was made to it was erroneous, there is still presented the issue whether or not it was prejudicial in the light of the pleadings and the competent testimony that is in the record.

It develops that at all times during the tenancy of the defendant and the payment of rent, there was controversy between the parties as to the correct amount of rental to be charged. This is manifest by the receipts which are in the bill of exceptions in all of which was made this notation, "subject to adjustment, if any".

Upon the rental of the property in April 1942, the rental paid was $45.00. When the property was registered with the Area Rent Office the application showed that the rental paid by the tenant was $45.00 but the rent on April 1, 1941, the time when the rental prices generally were frozen, was not given in

the application. Thereafter and by several amended notices the rent as of April 1, 1941, was fixed at $37.50 but the landlord claimed the benefit "of major capital improvements on the premises involved". There is no showing that at any time the rent was fixed by the rent director acting as administrator at more than $40.00 but, by force of the claim of the landlord that he had made capital improvements, it was the theory of the plaintiff and of the trial judge that under "1388.1704, Document No. 1782, Title 32, National Defense, Chapter 11, Part 1388, Defense Rental Areas Maximum Rent Regulation No. 26 for Housing Accommodations other than Hotels and Rooming Houses", $45.00 was the rental to be paid for the premises on an order of the director, of date April 30, 1943, covering the period from the date when the claim was made for the major capital improvements until the effective date of the order of the area rent director. This section, 1388.1704, and (d4) reads:

"Maximum Rents (unless and until changed by the administrator as provided in Section 1388.1705) shall be: Housing accommodations substantially changed between those dates April 1, 1941 and June 30, 1942, by major capital improvements as distinguished from ordinary repair, replacement and maintenance, the first rent for such accommodations after such construction or change; * * *."

1388.1705 covering adjustments and other determinations provides in (d):

"If the rent on the date determining the maximum rent, or any other fact necessary to the determination of the maximum rent, is in dispute between the landlord and the tenant, or is in doubt, or is not known, the administrator on petition of the landlord filed within thirty days after the effective date of this maximum rent regulation, or at any time on his own initiative may enter an order fixing the maximum rent by determining such fact; * * *."

Whether or not the landlord filed a petition within the time prescribed does not appear because of the fact that none of the papers which he filed are in the record but, it is obvious, that whatever was filed on his behalf, the Area Rent Director acted on his own initiative and not upon a petition of the landlord. It will be noted from that part of the regula-

tions of the OPA which we have quoted and discussed, that it becomes vital to the rights of the parties to determine if there was an order made by the rent director fixing the maximum rent on the premises under consideration. The instrument which it is claimed was such an order is in the record, defendant's Exhibit O, and reads as follows:

> January 28, 1943
> AR3-DA1-2991
> 810 Wayne Avenue
> Dayton, Ohio
> (Apartment No. 3)

### SUBSEQUENT RECOMMENDATION

**SUBJECT: Result of Rent Director's Initiative Action**

When filing the registration on this unit the landlord claimed a major capital improvement due to a substantial rehabilitation program on the premises and being willing to conform with regulations, also filed a petition, Form DD101U, under the above docket number. An inspection was made of the premises and after consideration of all factors involved, it is recommended that the Maximum Legal Rental of this unit be established at $40 per month.

This is a Recommendation and not an Order of the Area Rent Director. The Order for this rental adjustment will be issued by the Area Rent Director, ten days hence, unless objections are filed, and will become effective on the first rent paying date thereafter.

> (Signed Byron B. Harlan)
> Byron B. Harlan
> Area Rent Director

The answer of the defendant admits that there was an order made by the Rent Director for the payment of rent for the premises at $40.00 per month. Were it not for this admission, we would hesitate to say that the letter of the Area Rent Director is an order or is anything more than a basis for an order. In fact, the Area Rent Director was particular to state that the letter was not an order and, inasmuch as certain rights accrued to the tenant under paragraph 922, et seq., of the Emergency Price Control Act of 1942, U. S. Code, Supplement 3, 1941-1943, pages 830-831, only upon the issuance of such order, it becomes necessary to preserve those rights that the date thereof be definitely fixed. But the answer admitting the order fixing the maximum rental of the premises at $40.00

precludes any refutation of the binding effect thereof and of all facts which must necessarily have been determined in issuing the order.

Does the order in its terms require the conclusion that the director determined that the major capital improvements claimed to have been made were in fact made, and that because of them the rent was raised from $37.50 to $40.00? An examination of the rent regulations is convincing that the only basis thereunder upon which the rent director could fix the maximum monthly rental for the premises at $40.00 in the situation appearing is that plaintiff had made certain capital improvements thereon. This was the sole claim for authorization for an increased rental over and above that which was effective on April 1, 1941. The defendant having admitted that the rent director made an order fixing the maximum rental, it follows as a matter of law that it was made upon the hypothesis of the completion of certain major capital improvements on the premises and $45.00 being the amount of the first rental paid after the construction was the amount for which the defendant was obligated from the beginning of his tenancy until the effective date of the order of the Area Rent Director. The court was, therefore, correct in the conclusion that the plaintiff was entitled to a directed verdict on the first cause of action.

It is assigned as error that the trial judge had no authority to direct a verdict in the form of action involved, namely, forcible detainer but that, if the court had such power, the form of verdict submitted was insufficient to support an order of eviction against the defendant. The cited cases are not in point but, even in criminal cases, where specific intent is not an issue the court may direct a verdict where the facts will bear but one construction, viz., the guilt of the defendant. This was done in such a case and considered on review although the reported opinion does not discuss it, Myers v State, 5 Oh Ap 156, Motion to Certify overruled, 14 O. L. R. 160. We are satisfied that the court had a right to direct a verdict as the facts under the law supported such direction.

The form of the verdict which was a finding in favor of the plaintiff and against the defendant in the amount of $12.50, is irregular and not in conformity to the form of verdict prescribed in forcible detainer actions by §10457 GC, which is to the effect that if the jury find the complaint true, they shall render a general verdict of guilty against the defendant. The court should have submitted such a form of verdict but,

under the facts appearing and the law, and because they support a general verdict of guilty, and especially because the defendant interposed no objection to the form of the verdict at the time that it was submitted or when it was returned, the action, though erroneous, was not prejudicial.

A very closely related question was considered by our Supreme Court in **McGarvey v Puckett, 27 Oh St 669**, where the verdict returned was "We, the jury in the above case, do find for the plaintiff". The court held that the verdict, though not in the precise words of the statute, complied with its spirit and would not be disturbed when the party aggrieved took no exception and made no suggestion as to reforming such verdict.

The judgment will be affirmed.

BARNES, P. J. and GEIGER, J., concur.